# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RYAN PATTERSON,

      Plaintiff,

vs.                                                                 No. CIV 17-1116 JB/GBW

NINE ENERGY SERVICE, LLC,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss the First Amended Class Action Complaint (R. Doc. 3) and Compel Arbitration, filed December 6, 2017 (Doc. 5)("Motion"); and (ii) the Surreply in Opposition to Defendant's Motion to Dismiss the Class Action Complaint and Serve [sic], filed January 10, 2018 (Doc. 16)("Surreply Motion"). The Court held a hearing on June 27, 2018. The primary issues are: (i) whether the Court has diversity jurisdiction to adjudicate this case when the citizenship of one of the parties is unclear; (ii) whether the arbitration agreement into which Plaintiff Ryan Patterson and Defendant Nine Energy Service, LLC ("Nine Energy") entered contains adequate consideration; (iii) whether the arbitration agreement is substantively unconscionable, because it contains a unilateral carve-out allowing Nine Energy to request injunctive relief in court to protect its confidential information; and (iv) whether the arbitration agreement is substantively unconscionable, because it provides only sixty days after a dispute arises in which to file a demand for arbitration. The Court concludes that the parties have not established diversity jurisdiction, so the Court will order the parties to show cause why the Court should not dismiss this case for lack of subject-matter jurisdiction. On the merits, if the Court has subject-matter

jurisdiction, the Court is inclined to conclude that the Arbitration Agreement contains adequate consideration, and, although the injunctive relief provision is substantively unconscionable, it is also severable. Further, the Court is not inclined to hold the Arbitration Agreement's sixty-day limitations period unconscionable. Finally, if the Court has subject-matter jurisdiction, the Court is inclined to stay proceedings in this case, rather than dismissing it. Accordingly, the Court is inclined to grant the Motion in part.

## **FACTUAL BACKGROUND**

Patterson worked for Nine Energy, an oilfield services company, from March to October of 2017. See First Amended Class Action Complaint ¶ 5, at 2, filed November 13, 2017 (Doc. 3)("Amended Complaint"). His "primary job duty consisted of operating pressure control equipment and tools." Amended Complaint ¶ 15, at 3. Nine Energy first offered Patterson employment via letter on February 28, 2017. See Letter from Sally Haynes, Human Resources Manager, to Ryan Patterson at 1-2, (dated February 28, 2017), filed January 3, 2018 (Doc. 14-2)("Offer Letter"). Patterson's Offer Letter states that his employment is contingent upon an enumerated list of items, including drug testing, physical capacity testing, and other things. See Offer Letter at 1. The Offer Letter does not mention arbitration. See Offer Letter at 1-2. Patterson accepted the employment offer by signing the Offer Letter on March 1, 2017. See Offer Letter at 2. Patterson did not begin work at Nine Energy until March 20, 2017. See Supplemental Declaration of Sharon Warren ¶ 7, at 2 (dated January 3, 2018), filed January 3, 2018 (Doc. 14-1).

On March 1, 2017 -- the same day that Patterson signed the Offer Letter -- he also signed the Confidentiality and Dispute Resolution Agreement at 6, filed December 6, 2017 (Doc. 5-2)("Arbitration Agreement"). The Arbitration Agreement states that "the Company and the

Employee agree to submit exclusively to final and binding arbitration any and all Disputes as defined herein in accordance with the following understanding and terms." Arbitration Agreement at 3. The Arbitration Agreement defines the word "dispute" as

> all legal and equitable claims, demands, disputes, controversies, issues, and disagreements, of whatever nature or kind, whether in contract, tort, under statute or regulation, or any other law or source of legal obligation, including but not limited to those relating to, concerning, or arising out of this Agreement; the interpretation or subject matter of this Agreement or program . . . wages or other compensation received by or owed to any Employee, including minimum wage and overtime pay.

Arbitration Agreement at 2. The Arbitration Agreement continues:

> Each Dispute shall be arbitrated on an individual basis. The parties forego and waive any right to join or consolidate their Disputes or claims with those of any other employee . . . or to assert any Disputes or claims in arbitration as a representative or as a member of a class. . . . Neither the Company nor any employee or applicant for employment may pursue any Dispute or claim on a class action, collective action, or consolidated basis or in a representative capacity on behalf of other individuals, or participate as a class or collective action member in such a proceeding. . . . The Parties waive any right to a jury trial and to pursue or participate in class or collective actions with respect to Disputes that are subject of this Agreement and for which a jury trial, class action, and collective action would otherwise be available.

Arbitration Agreement at 3. The Arbitration Agreement contains several other important provisions. See Arbitration Agreement at 3-4. One states that "arbitration shall be commenced by either Party filing a demand for arbitration with the AAA[1] within 60 days after such Dispute has arisen." Arbitration Agreement at 3. Another notes:

> Notwithstanding the provisions of this Agreement, the Company may bring an action in any court of competent jurisdiction for injunctive relief to enforce the Employee's obligations with respect to the confidentiality and protection of trade secrets and other non-public information belonging to the Company, or with respect to any non-competition, non-solicitation, or any other restrictive covenant provisions in any separate agreement between the Company and the Employee.

---

[1] AAA stands for the American Arbitration Association.

Arbitration Agreement at 4. Still another provision states: "The Parties acknowledge and agree that this Agreement and the Parties' employment relationship affect and involve interstate commerce, and that this Agreement is governed by the Federal Arbitration Act."[2] Arbitration Agreement at 5. Finally, the Arbitration Agreement contains an integration clause, stating:

> No agreements or representations, oral or otherwise express or implied, with respect to the subject matter hereof have been made by either Party that are not set forth expressly in this Agreement. . . . This Agreement sets forth the entire agreement of the Parties hereto with respect to the subject matter herein, in particular the Parties' agreement regarding the protection of Confidential Information and the procedural mechanism for the final resolution of Disputes and supersedes all prior understandings, agreements, clauses, provisions, representations, or promises, whether oral or written, of the Parties to the extent they relate to or concern the subject matter herein.

Arbitration Agreement at 5. Patterson now alleges in this class action that Nine Energy failed to pay him and other employees overtime wages in violation of the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-22(D). See Amended Complaint ¶ 3, at 1.

## PROCEDURAL BACKGROUND

Patterson filed his original Complaint on November 8, 2017. See Original Class Action Complaint, filed November 8, 2017 (Doc. 1)("Original Complaint"). Patterson subsequently filed the Amended Complaint on November 13, 2017. See Amended Complaint at 1. Nine Energy filed the Motion on December 6, 2017. See Motion at 1.

### 1. The Motion.

Nine Energy moves the Court to dismiss this case for lack of subject-matter jurisdiction and to compel arbitration. See Motion at 1. Nine Energy first contends that Patterson's claims fall within the Arbitration Agreement's scope, because the Arbitration Agreement's provisions "cover all disputes, claims, or disagreements relating to Plaintiff's employment." Motion at 5.

---

[2] 9 U.S.C. §§ 1-16 ("FAA").

Nine Energy then argues that the Arbitration Agreement contains adequate consideration, asserting that "the bargained for exchange in this case was Plaintiff's offer of employment with Nine Energy in exchange for signing the Confidentiality and Dispute Resolution Agreement as well as the Parties' mutual agreement to submit all employment disputes to arbitration." Motion at 6. Turning to the class action allegations, Nine Energy avers that the Arbitration Agreement expressly states that the parties waive any right to participate in a class or collective action regarding any disputes subject to the agreement. See Motion at 7-8. Nine Energy concludes that the Court should grant the Motion and compel Patterson to arbitrate his claims on an individual basis. See Motion at 8.

2.     **The Response**.

Patterson responds. See Response to Defendant's Motion to Dismiss the First Amended Class Action Complaint and Compel Arbitration, filed January 2, 2018 (Doc. 13-1)("Response"). Patterson first asserts that the Arbitration Agreement is substantively unconscionable. See Response at 4. According to Patterson, the Arbitration Agreement section allowing Nine Energy to bring an action for injunctive relief in court to enforce an employee's confidentiality obligations, such as the protection of trade secrets, represents a unilateral carve-out favoring Nine Energy and is therefore unconscionable. See Response at 4-5. Second, Patterson avers that the Arbitration Agreement contains no consideration and is thus illusory. See Response at 5. According to Patterson "continued at-will employment cannot serve as consideration for an agreement to arbitrate," which Patterson asserts is the Arbitration Agreement's purported consideration. Response at 6-7.[3]

_____

[3]Patterson also submits a Notice of Supplemental Authorities, filed December 27, 2017 (Doc. 12)("Notice"). The Notice briefly mentions two cases discussing consideration in arbitration agreements. See Notice at 1. In the first case, the Honorable Richard Puglisi, then-

**3.     The Reply.**

Nine Energy replies.  See Defendant's Reply in Support of Motion to Dismiss the First Amended Class Action Complaint and Compel Arbitration, filed January 3, 2018 (Doc. 14)("Reply").  Nine Energy first asserts that the Arbitration Agreement's consideration is Patterson's initial offer of employment and not continued at-will employment, because Patterson signed the Arbitration Agreement on the same day he accepted his employment offer and did not begin working for Nine Energy until twenty days later.  See Reply at 5.  Additionally, Nine Energy contends that "there was separate, valid consideration for the Agreement.  In exchange for Plaintiff agreeing to arbitrate his employment-related disputes, Nine Energy promised not only to hire Plaintiff, but also to provide him access to its confidential information and trade secrets."  Reply at 11.

Second, Nine Energy argues that, while part of the Arbitration Agreement may exempt Nine Energy from arbitration, other parts of the agreement contain "exclusions for numerous types of employment-related claims that Plaintiff alone would be able to pursue."  Reply at 9. Nine Energy continues that "the exclusion of which Plaintiff complains relates to one limited form of relief -- injunctive relief -- that only the employer might be able to pursue to protect its confidential information and trade secrets."  Reply at 9.  According to Nine Energy, "[i]t is impossible that the Plaintiff would be able to bring such a claim, just as it is impossible that Nine Energy would be able to bring any of the claims excluded for Plaintiff (i.e. EEOC charges,

United States Magistrate Judge for the United States District Court for the District of New Mexico, held that the plaintiff "was hired prior to agreeing to arbitration.  Upon starting her employment she was asked to surrender a valuable right -- the right to a jury trial -- with no detriment to [the defendant] and no benefit to her.  Thus, the purported agreement is unenforceable."  Zamprelli v. Am. Golf Corp., No. CIV 00-0181 BB/RLP, at *4 (Doc. 46) (D.N.M. 2000)(Puglisi, M.J.).  In the second case, the Honorable Bruce Black, United States District Judge, affirmed Magistrate Judge Puglisi's holding.  See Zamprelli v. Am. Golf Corp., No. CIV 00-0181, 2001 WL 37119362, at *4 (D.N.M. 2001)(Black, J.).

- 6 -

NLRB charges, unemployment claims)." Reply at 9.

Finally, Nine Energy contends that, "[e]ven if the Court were to find this provision unconscionable, the Court can and should modify or sever the provision rather than invalidating the entire Agreement." Reply at 11. According to Nine Energy, the provision allowing it to bring an action for injunctive relief to protect confidential information "is not relevant or intertwined with the agreement to arbitrate compensation disputes, and severability is in line with the strong federal policy underlying the FAA favoring enforcement of arbitration agreements." Reply at 11-12.

### 4. **The Surreply.**

Patterson filed a surreply. <u>See</u> Surreply in Opposition to Defendant's Motion to Dismiss the Class Action Complaint and Compel Arbitration, filed January 10, 2018 (Doc. 16-1)("Surreply").[4] Patterson first asserts that Nine Energy's employment offer was not contingent on signing the Arbitration Agreement, so the employment offer is not consideration for the agreement. <u>See</u> Surreply at 4. According to Patterson, Nine Energy's employment offer cannot be consideration for Patterson agreeing to arbitration, because the Offer Letter provides a list of

---

[4]Patterson "requests that the Court grant leave to file Plaintiff's surreply." Surreply Motion at 2. Although Patterson's request was opposed to the extent that his Surreply "advanced new issues or arguments," Surreply Motion at 4, the Court grants this request. In the summary judgment context, the Court has noted: "'When a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond.'" <u>Shattuck v. Lucero</u>, No. CIV 04-1287, 2005 WL 2295555, at *2 (D.N.M. 2005)(Browning, J.)(quoting <u>Beaird v. Seagate Tech., Inc.</u>, 145 F.3d 1159, 1164-65 (10th Cir. 1998)). This logic applies equally to motions to compel arbitration. If a party raises new evidence about an arbitration agreement in a reply, then the nonmovant should be able to respond. Here, Nine Energy introduces new evidence regarding the Arbitration Agreement in the reply, specifically the facts that Patterson signed the agreement on the same day as the Offer Letter and that Patterson did not begin working for Nine Energy until twenty days later. <u>See</u> Reply at 2-3; Offer Letter at 2. Given this new evidence, the Court will grant leave for Patterson to file a surreply. Also, there is no prejudice to Nine Energy, because the Court held a hearing, giving both parties a full opportunity to argue all issues.

contingencies, none of which include signing the Arbitration Agreement.  See Surreply at 6.

Further, according to Patterson, the Arbitration Agreement "contains an explicit merger clause

that prevents the Offer Letter -- or any other oral/written agreement -- from being incorporated

into the Arbitration Agreement or for serving as the consideration for the Agreement."  Surreply

at 6.

Second, Patterson takes issue with Nine Energy's assertion that it promised to provide

confidential information and trade secrets to Patterson as consideration for him signing the

Arbitration Agreement.  See Surreply at 6-7.  According to Patterson, the Arbitration Agreement

"does not require Defendant to disclose any specific confidential information or trade secrets."

Surreply at 7.  Patterson adds that "no New Mexico court has reached the conclusion that an

agreement to provide confidential information is adequate consideration for an agreement to

arbitrate."  Surreply at 7.

Third, Patterson argues for the first time that the Arbitration Agreement is

unconscionable, because "the terms of the agreement prevent Plaintiff from vindicating his

statutory rights under the FLSA."[5]  Surreply at 7.  Specifically, Patterson contends that the

Arbitration Agreement's provision requiring arbitration to commence within 60 days after a

dispute arises is unconscionable, because "the FLSA's limitations period may not be shortened

by contract."  Surreply at 8.  Finally, Patterson avers that the Court should not sever any

allegedly unconscionable provisions of the Arbitration Agreement, because the agreement

contains no severance clause.  See Surreply at 9-10.  Patterson instead concludes that the Court

should refuse to enforce the entire Arbitration Agreement and deny the Motion.  See Surreply at

10.

---

[5]The FLSA is the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

5.      **The Hearing.**

The Court held a hearing.  <u>See</u> Draft Transcript of Motion Hearing at 1:10-11 (taken June 27, 2018)(Court)("Tr.").[6]  Nine Energy began by asserting that "Mr. Patterson in the briefing concedes that this Court has recognized . . . that an offer of at will employment is sufficient consideration for an arbitration agreement. And that's exactly what we have here."  Tr. at 4:19-24 (Mann).  Patterson responded that the Arbitration Agreement's integration clause precludes any outside oral or written agreement -- including Patterson's employment offer -- from being incorporated into the Arbitration Agreement.  <u>See</u> Tr. at 10:1-9 (Siegel).  Patterson added that the Offer Letter lists several contingencies that Patterson had to meet to accept his employment offer, none of which includes signing the Arbitration Agreement.  <u>See</u> Tr. at 13:2-9 (Siegel).

The parties then discussed unconscionability.  <u>See</u> Tr. at 17:1-5 (Mann).  Nine Energy asserted that Patterson "latches onto a portion of the agreement . . . that reserves to Nine the right to seek injunctive relief to enforce certain aspects of the agreement pertaining to confidential information. . . .  What Mr. Patterson chooses to ignore [is] that the same paragraph on which he bases this argument contains multiple carve-outs solely for the . . . plaintiff here."  Tr. at 17:1-14 (Mann).  Nine Energy thus contended that the carve-outs in the Arbitration Agreement are bilateral and not unilateral.  <u>See</u> Tr. at 18:3-6 (Mann).

Patterson then returned to the podium and asserted that the Arbitration Agreement is substantively unconscionable for the separate reason that it "has effectively shortened the statute of limitations period."  Tr. at 22:15-16 (Siegel).  Specifically, Patterson argued that the Arbitration Agreement shortens the limitations period from three years to sixty days.  <u>See</u> Tr. at 22:21-24 (Siegel).  Nine Energy responded that "the parties cannot limit statute[s] of limitations

---

[6]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

by contract. So even if that language is contained in the agreement [, were] it be attempted to be enforced it could not." Tr. at 25:9-13 (Mann).

The Court then asked if Nine Energy contended that, if the Court were to find any provision unconscionable, it should sever the provision rather than not enforcing the entire agreement. See Tr. at 28:25-29:7 (Court, Mann). Nine Energy responded that, if the Court concluded that a provision is unconscionable, then Nine Energy would prefer the rest of the agreement enforced. See Tr. at 29:8-16 (Mann). At the hearing's conclusion, the Court stated that it was inclined to grant the Motion. See Tr. at 35:2 (Court).

## LAW REGARDING ARBITRATION AGREEMENTS

An arbitration agreement is a contract or a provision in a contract whereby parties agree to "settle by arbitration a controversy . . . arising out of such contract or transaction." 9 U.S.C. § 2. Both federal and New Mexico law reflect a public policy in favor of arbitration agreements. See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1488-89 (10th Cir. 1994)("There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."); United Tech. & Res., Inc. v. Dar Al Islam, 1993-NMSC-005, ¶ 11, 846 P.2d 307, 309 ("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'")(quoting Dairyland Ins. Co. v. Rose, 1979-NMSC-021, ¶ 14, 591 P.2d 281, 284). To be enforceable, an arbitration agreement must be validly formed pursuant to state contract law principles -- e.g., the arbitration agreement must not be illusory or unconscionable. See Salazar v. Citadel Communications Corp., 2004-NMSC-013, ¶ 8, 90 P.3d 466, 469 ("To determine whether the agreement to arbitrate is valid, courts look to general state contract law . . . .").

1. **<u>Federal Law.</u>**

"The FAA reflects the fundamental principle that arbitration is a matter of contract."
<u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 67 (2010). "[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." <u>Allied-Bruce Terminix Cos., Inc. v. Dobson</u>, 513 U.S. 265, 270 (1995). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. at 67-68 (internal citations omitted).

Under § 4 of the FAA, a party "aggrieved" by another party's failure "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If one party's refusal to arbitrate under a written agreement aggrieves another party, the district court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 2, the "primary substantive provision of the Act," <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983), provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. at 64.

Upon a finding that a matter is referable to arbitration, the FAA also indicates that the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Notwithstanding 9 U.S.C. § 3's terms, however, several Courts of Appeals have concluded that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001). See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000)("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).

The United States Court of Appeals for the Tenth Circuit has cautioned that, when one of the parties petitions the court to stay an action pending compulsory arbitration, 9 U.S.C. § 3's mandatory language is binding, and it is error for the court to dismiss the action. See Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994). When, however, the party seeking to compel arbitration requests the court for dismissal, and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case. See Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 797 (10th Cir. 1995); Cornoyer v. AT&T Mobility Servs., LLC, No. CIV 15-0474, 2016 WL 6404853, at *7-8 (D.N.M. Oct. 5, 2016)(Browning, J.); Thompson v. THI of New Mexico at Casa Arena Blanca, LLC, No. CIV 05-1331, 2006 WL 4061187, at *16 (D.N.M. Sept. 12, 2006)(Browning, J.)(dismissing a case where the plaintiff neither requested a stay nor argued that some claims may not be arbitrable);

Evangelical Lutheran Good Samaritan Society v. Moreno, 277 F. Supp. 3d 1191, 1210 (D.N.M. 2017)(Browning, J.).

2.    **New Mexico Law.**

New Mexico's Uniform Arbitration Act, N.M. Stat. Ann. §§ 44-7a-1 to -32 ("NMUAA"), provides that an agreement to submit any controversy arising between the parties to arbitration is "valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.M. Stat. Ann. § 44-7A-7(a). If the court concludes that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate. See N.M. Stat. Ann. § 44-7A-8(a). Where the provision for arbitration is disputed, the court's function is to determine whether there is an agreement to arbitrate and to order arbitration where an agreement is found. See N.M. Stat. Ann. § 44-7A-8(a).

Similar to the federal courts' interpretation of the FAA, New Mexico courts have viewed the NMUAA as an expression of a public policy favoring arbitration. See United Tech. & Res., Inc. v. Dar Al Islam, 1993-NMSC-005, ¶ 11, 846 P.2d at 309 ("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'")(quoting Dairyland Ins. Co. v. Rose, 1979-NMSC-021, ¶ 14, 591 P.2d at 284). More specifically, New Mexico courts have construed the NMUAA's legislative purpose as an attempt to reduce the court's caseload. See Bd. of Educ. Taos Mun. Sch. v. Architects, Taos, 1985-NMSC-102, ¶ 10, 709 P.2d 184, 186 ("A concern for preserving scarce judicial resources lies at the heart of the preference for arbitration."); Dairyland Ins. Co. v. Rose, 1979-NMSC-021, ¶ 19, 591 P.2d at 285 (concluding that "the legislative intent in enacting the [NMUAA], and the policy of the courts in enforcing it, is to reduce caseloads in the courts, not only by allowing arbitration, but also by requiring controversies to be resolved by arbitration where contracts or other documents so provide"). In New Mexico, when the court finds that an arbitration

agreement exists and is valid, then, in accordance with the NMUAA, the court has a duty to enforce the agreement's provisions and order adherence to that arbitration agreement.  <u>See</u> <u>Bernalillo Cty. Med. Ctr. Emps' Ass'n Local 2370 v. Cancelosi</u>, 1978-NMSC-086, ¶¶ 4-5, 587 P.2d 960, 961.  Consistent with this understanding, the Supreme Court of New Mexico has interpreted the NMUAA to limit the court's role to determining if an arbitration agreement exists and, if so, to order the parties to arbitration:

> When a broad and general arbitration clause is used, as in this case, the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

<u>K.L. House Constr. Co. v. City of Albuquerque</u>, 1978-NMSC-025, ¶ 8, 576 P.2d 752, 754. Accordingly, in New Mexico, parties entering a contract providing for the resolution of disputes through arbitration are bound by their agreement to arbitrate.  <u>See</u> <u>Christmas v. Cimarron Realty Co.</u>, 1982-NMSC-079, ¶¶ 7-10, 648 P.2d 788, 790; <u>Evangelical Lutheran Good Samaritan Society v. Moreno</u>, 277 F. Supp. 3d at 1211.

### 3.    <u>Public Policy Favoring Enforcement of an Arbitration Agreement</u>.

"There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."  <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 39 F.3d at 1488-89.  <u>See</u> <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration.");  <u>Hill v. Ricoh Americas Corp.</u>, 603 F.3d 766, 771 (10th Cir. 2010)("[T]he FAA is a 'congressional declaration of a liberal federal policy favoring arbitration agreements.'")(quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. at 24).  Congress enacted the FAA with the express purpose of granting arbitration

agreements the same enforceability as any other contract provision.  See Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)(stating that Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts.").  When arbitration's applicability is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25). New Mexico state courts also view arbitration as a "highly favored" method of resolving disputes, "in part because '[i]t promotes both judicial efficiency and conservation of resources by all parties.'"  Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 5, 107 P.3d 11, 13 (alteration original).  See Cornoyer v. AT&T Mobility Servs., LLC, 2016 WL 6404853, at *8.

### 4.     A Valid Arbitration Agreement's Existence.

The Supreme Court of the United States of America has noted that "[a]rbitration is simply a matter of contract between parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)(internal citations omitted).  Courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration.  See Hicks v. Cadle, Co., 355 F. App'x 186, 192 (10th Cir. 2009)("We resolve any doubts in favor of arbitrability.")(citing Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 209 (1991)); Armijo v. Prudential Ins. Co., 72 F.3d 793, 797-98 (10th Cir. 1995)(stating that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and that "arbitration clauses must be interpreted liberally, and any doubts should be resolved in favor of arbitration," and holding that the plaintiffs had "failed to rebut the presumption of arbitrability.").

While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, . . . this presumption disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998)("When the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."); Presbyterian Healthcare Services v. Goldman, Sachs & Co., 112 F. Supp. at 1157.

In the Tenth Circuit, and in the courts of New Mexico, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." Avedon Eng'g Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997). See K.L. House Constr. Co. v. City of Albuquerque, 1978-NMSC-025, ¶ 8, 576 P.2d at 754 ("[T]he courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration."). "Like other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, West, Inc. v. Jackson, 561 U.S. at 68 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). See Cornoyer v. AT&T Mobility Servs., LLC, 2016 WL 6404853, at *8-11. Cf. K.L. House Construction Co. v. City of Albuquerque, 1978-NMSC-025, ¶ 8, 576 P.2d at 754 (holding that, because a valid arbitration clause existed, the parties had to arbitrate all disputes when the "subject matter of the dispute has a reasonable relationship to the subject matter of the contract").

### 5.    Consideration and Illusory Arbitration Agreements.

"To determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 8, 90 P.3d

466, 469 (citations omitted).  "It is for the trial court, and not the arbitrator, to decide whether a valid agreement to arbitrate exists."  <u>Sisneros v. Citadel Broad. Co.</u>, 2006-NMCA-102, ¶ 13, 142 P.3d 34, 39.  It is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby."  <u>Ballard v. Chavez</u>, 1994-NMSC-007, ¶ 8, 868 P.2d 646, 648.  Under New Mexico law, "[a] legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent."  <u>Piano v. Premier Distrib. Co.</u>, 2005-NMCA-018, ¶ 6, 107 P.3d at 14 (internal quotation marks omitted).

"Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do."  <u>Talbott v. Roswell Hosp. Corp.</u>, 2005-NMCA-109, ¶ 16, 118 P.3d 194, 198.  "A valid contract must possess mutuality of obligation.  Mutuality means both sides must provide consideration."  <u>Heye v. Am. Golf Corp.</u>, 2003-NMCA-138, ¶ 12, 80 P.3d 495, 499.  Absent evidence of a "bargained-for exchange between the parties," an agreement lacks consideration and is unenforceable.  <u>Smith v. Vill. of Ruidoso</u>, 1999-NMCA-151, ¶ 33, 994 P.2d 50, 58.  "Under general New Mexico contract law, an agreement that is subject to unilateral modification or revocation is illusory and unenforceable."  <u>Salazar v. Citadel Commc'ns Corp.</u>, 2004-NMSC-013, ¶ 9, 90 P.3d at 469.  "This principle applies equally to agreements to arbitrate."  <u>Salazar v. Citadel Commc'ns Corp.</u>, 2004-NMSC-013, ¶ 9, 90 P.3d at 469.  The Supreme Court of New Mexico has concluded that, if a party "reserves the right to change the agreement unilaterally, and at any time," the party "has not really promised anything at all and should not be permitted to bind the other party."  <u>Salazar v. Citadel Commc'ns Corp.</u>, 2004-NMSC-013, ¶ 9, 90 P.3d at 469.

Several cases arising in New Mexico provide examples of illusory agreements to arbitrate. For instance, in Dumais v. American Golf Corp., 150 F. Supp. 2d 1182 (D.N.M. 2001)(Vazquez, J.), the Honorable Martha Vazquez, United States District Judge, was asked to determine if an arbitration provision contained in an employment handbook was enforceable, and precluded an employee from bringing a claim for sexual harassment and constructive discharge under Title VII, against her employer. See 150 F. Supp. 2d at 1193. The employer suggested that two documents which the employee executed when she became an employee constituted a valid agreement to arbitrate such disputes. See 150 F. Supp. 2d at 1193. The documents included: (i) a form acknowledging that the employee had read and would abide by the employer's arbitration program -- the "We Can Work It Out" program; and (ii) an acknowledgment form that the employee would comply with the employment handbook and the "We Can Work It Out" program. 150 F. Supp. 2d at 1193. Judge Vazquez concluded that the arbitration agreement embodied in the "We Can Work It Out" program was illusory, because it was executed over two months after the employee began her employment. 150 F. Supp. 2d at 1193. The agreement also modified the employment terms -- it divested the employee's right to have disputes heard in an Article III court -- without consideration in return for that divestiture. 150 F. Supp. 2d at 1193. Judge Vazquez noted that inconsistent provisions in the employment agreement made it unclear whether the arbitration agreement was binding on the employer and that, therefore, the potentially unilateral character of the promise to arbitrate made it illusory. See 150 F. Supp. 2d at 1194. The Tenth Circuit affirmed Judge Vazquez' holding in a de novo review on appeal. See Dumais v. American Golf Corp, 299 F.3d 1216, 1220 (10th Cir. 2002). In affirming Judge Vazquez, the Tenth Circuit stated: "We join other circuits in holding that an

arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." 299 F.3d at 1219.

Additionally, in <u>Heye v. American Golf Corp.</u>, the Court of Appeals of New Mexico considered a question similar to the one that the federal court addressed in <u>Dumais v. American Golf Corp.</u> <u>See Heye v. American Golf Corp.</u>, 2003-NMCA-138, ¶¶ 10-15, 80 P.3d at 499-500. The Court of Appeals of New Mexico assessed the validity of an arbitration agreement in an employment contract that bound the employee, but not the employer, to arbitrate and that the employee signed after she was hired. <u>See</u> 2003-NMCA-138, ¶¶ 10-15, 80 P.3d at 499-500. In concluding that the agreement was illusory, the Court of Appeals of New Mexico noted that the agreement permitted the employer to "amend, supplement, rescind or revise the policy regarding arbitration at its whim." 2003-NMCA-138, ¶ 13, 80 P.3d at 499. Although the employee was bound to arbitrate, the employer "remain[ed] free to selectively abide by its promise to arbitrate," and therefore the employer's "promise to arbitrate [did] not provide the consideration necessary to enforce the arbitration agreement." 2003-NMCA-138, ¶ 15, 80 P.3d at 500.

Next, in <u>Piano v. Premier Distributing Co.</u>, the plaintiff worked as an administrative assistant for the defendant on an at-will employment basis. <u>See</u> 2005-NMCA-018, ¶¶ 2-3, 107 P.3d at 13. During her employment, the defendant presented the plaintiff with an arbitration agreement to sign, with the understanding that, if she did not sign it, the defendant would terminate her employment. <u>See</u> 2005-NMCA-018, ¶¶ 2-3, 107 P.3d at 13. The plaintiff signed the agreement, and, later, when her employment was terminated, she brought suit against the defendant for wrongful termination; the defendant moved to compel arbitration. <u>See</u> 2005-NMCA-018, ¶¶ 2-3, 107 P.3d at 13. On appeal of the district court's denial of the defendant's motion to compel arbitration, the Court of Appeals of New Mexico addressed whether an

employer's promise of continued at-will employment constitutes sufficient consideration for an employee's promise to submit her claims to arbitration. See 2005-NMCA-018, ¶¶ 6-8, 107 P.3d at 14. The Court of Appeals of New Mexico concluded that the employer's promise was illusory and explained: "The implied promise of continued at-will employment placed no constraints on Defendant's future conduct; its decision to continue Plaintiff's at-will employment was entirely discretionary." 2005-NMCA-018, ¶ 8, 107 P.3d at 14.

In Lumuenemo v. Citigroup, Inc., No. 08-cv-0830, 2009 WL 371901 (D. Colo. Feb. 12, 2009), the Honorable Wiley Y. Daniel, Chief United States District Judge for the District of Colorado, distinguished the facts in Piano v. Premier Distributing Co. from the facts in Lumuenemo v. Citigroup, Inc., stating:

> Plaintiff cites Piano v. Premier Distributing Co., 107 P.3d 11 (N.M. Ct. App. 2004), as support for her argument. However, the holding in Piano turned on the fact that the plaintiff was an at-will employee prior to signing the arbitration agreement, and therefore, the implied promise of continued at-will employment did not constitute consideration. Id. at 60. Piano is distinguishable from the facts before this Court. Here, Defendant's initial hiring of Plaintiff was conditioned on her consent to the terms of the Arbitration Agreement; thus, there was consideration in the form of employment. Further, Defendant does need Plaintiff's approval -- Plaintiff had up to 30 days to contest any changes to the Arbitration Agreement and/or to decide whether to continue employment based on such changes. Moreover, the holding in Piano is not binding on this court.

Lumuenemo v. Citigroup, Inc., 2009 WL 371901, at *5.

Further, in Salazar v. Citadel Communications Corp., the Supreme Court of New Mexico held that, because Citadel Communications reserved the right to modify any provision of its employee handbook at any time, including the arbitration agreement contained therein, the agreement to arbitrate was "an unenforceable illusory promise." Salazar v. Citadel Communications Corp., 2004-NMSC-013, ¶ 16, 90 P.3d at 471. In contrast, the Court of Appeals of New Mexico in Sisneros v. Citadel Broadcasting Co. concluded that the arbitration

policy at issue restricted Citadel Broadcasting's right to terminate or amend the agreement to arbitrate, and, thus, when Citadel Broadcasting terminated Sisneros' employment, Citadel Broadcasting was bound to arbitrate the dispute, just as Sisneros was bound to arbitrate, and therefore mutual obligation existed and the arbitration agreement was not illusory. See Sisneros v. Citadel Broadcasting Co., 2006-NMCA-102, ¶ 34, 142 P.3d at 43. Similarly, in Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470 (10th Cir. 2006), the arbitration agreement required the employer to provide ten-days' notice to its current employees before amending or terminating the arbitration agreement, and provided that the employer could not amend the agreement if it had actual notice of a potential dispute or claim, nor could it terminate the agreement as to any claims which arose before the termination date. See 465 F.3d at 478. The Tenth Circuit, applying Oklahoma contract law, concluded that "[t]he [ ] limitations [were] sufficient to avoid rendering the parties' Agreement to arbitrate illusory." Hardin v. First Cash Fin. Servs., Inc., 465 F.3d at 478. See Pennington v. Northrop Grumman Space & Mission Sys. Corp., 269 F. App'x 812, 820 (10th Cir. 2008)(holding that "the reciprocal obligation to arbitrate provides the requisite consideration."); Cornoyer v. AT&T Mobility Servs., LLC, 2016 WL 6404853, at *8.

## NEW MEXICO LAW ON CONTRACT INTERPRETATION AND EXTRINSIC EVIDENCE

In C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 817 P.2d 238 (1991), the Supreme Court of New Mexico abolished the four-corners standard of contract interpretation, which required a court to determine whether a contract was ambiguous without considering evidence of the circumstances surrounding the contract's negotiation. The Supreme Court of New Mexico held that, "in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the

contract and of any relevant usage of trade, course of dealing, and course of performance." Id. at

508-09, 817 P.2d at 242-43 (footnote omitted). The Supreme Court of New Mexico went on to

discuss the parol-evidence rule:

> The parol evidence rule is a rule of substantive law that bars admission of
> evidence extrinsic to the contract to contradict and perhaps even to supplement
> the writing. . . . The rule should not bar introduction of evidence to explain terms.
> As Professor Corbin observes, "No parol evidence that is offered can be said to
> vary or contradict a writing until by process of interpretation the meaning of the
> writing is determined." [A.] Corbin, The Parol Evidence Rule, 53 Yale L.J. 603,
> 622 (1944). The operative question then becomes whether the evidence is offered
> to contradict the writing or to aid in its interpretation.

C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. at 509, 817 P.2d at 243 (footnote omitted).

In Mark V, Inc. v. Mellekas ("Mark V"), the Supreme Court of New Mexico made it

clear that consideration of extrinsic evidence was not only allowed, but required. See id. at 781,

845 P.2d at 1235 (holding that court committed error when it "relied solely on the face or the

'four corners' of the document"). The Supreme Court of New Mexico summarized the law of

contract interpretation in New Mexico as follows:

> The court may consider collateral evidence of the circumstances surrounding the
> execution of the agreement in determining whether the language of the agreement
> is unclear. C.R. Anthony, 112 N.M. at 508-09, 817 P.2d at 242-43. If the
> evidence presented is so plain that no reasonable person could hold any way but
> one, then the court may interpret the meaning as a matter of law. Id. at 510, 817
> P.2d at 244. If the court determines that the contract is reasonably and fairly
> susceptible of different constructions, an ambiguity exists. Vickers v. North Am.
> Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the
> proffered evidence of surrounding facts and circumstances is in dispute, turns on
> witness credibility, or is susceptible of conflicting inferences, the meaning must
> be resolved by the appropriate fact finder . . . .

Mark V, 114 N.M. at 781, 845 P.2d at 1235.

## LAW REGARDING NEW MEXICO'S UNCONSCIONABILITY DEFENSE TO CONTRACT ENFORCEMENT

In New Mexico, "unconscionability is an affirmative defense to contract enforcement."

Strausberg v. Laurel Healthcare Providers, LLC, 2013-NMSC-032, ¶ 3, 304 P.3d 409, 412.

Consequently, "[c]ourts may render a contract or portions of a contract unenforceable under the equitable doctrine of unconscionability when the terms are 'unreasonably favorable to one party while precluding a meaningful choice of the other party.'" Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 6, 385 P.3d 619, 621 (alteration added)(quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 21, 208 P.3d 901, 907). The party asserting an unconscionability defense "bears the burden of proving that a contract or a portion of a contract should be voided as unconscionable." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (citing Strausberg v. Laurel Healthcare Providers, LLC, 2013-NMSC-032, ¶¶ 24, 39, 48, 304 P.3d at 415). "The burden of proving unconscionability refers only to 'the burden of persuasion, i.e., the burden to persuade the factfinder' and not 'the burden of production, i.e., the burden to produce evidence.'" Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (quoting Strausberg v. Laurel Healthcare Providers, LLC, 2013-NMSC-032, ¶ 24, 304 P.3d at 415).

"A contract can be procedurally or substantively unconscionable." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (citing Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 21, 208 P.3d at 907). See Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d 1215, 1221 ("The classic articulation of unconscionability is that it is comprised of two prongs: substantive unconscionability and procedural unconscionability.")(citing 7 Joseph M. Perillo, Corbin on Contracts § 29.4, at 388 (2002 ed.)). "Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair." Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (citing Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, ¶ 14, 68 P.3d 901, 907; Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d 675, 679,

disapproved of on other grounds by Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 31, 208 P.3d at 909). "Procedural unconscionability," by contrast, "is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties." Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (citing Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679).

"'The weight given to procedural and substantive considerations varies with the circumstances of each case.'" Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (quoting Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679). "While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all." Cordova v. World Fin. Corp. of NM, 2009-NMSC-021, ¶ 24, 208 P.3d at 908 (citing Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 22, 188 P.3d at 1221 (invalidating an arbitration clause without a finding of procedural unconscionability where "there has been such an overwhelming showing of substantive unconscionability"); Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679; 7 Joseph M. Perillo, Corbin on Contracts § 29.1, at 377 (ed. 2002)(observing that there is "no basis in the text" of Article 2 of the Uniform Commercial Code for concluding that the defense of unconscionability cannot be invoked unless the contract or clause is both procedurally and substantively unconscionable). Moreover, "[p]rocedural and substantive unconscionability often have an inverse relationship[.] The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable." Cordova v. World Fin. Corp. of NM, 2009-

NMSC-021, ¶ 24, 208 P.3d at 908 (alteration added)(citing <u>Circuit City Stores, Inc. v. Mantor</u>, 335 F.3d 1101, 1106 (9th Cir. 2003); 1 E. Allan Farnsworth, <u>Farnsworth on Contracts</u> § 4.28, at 585 (3d ed. 2004)("A court will weigh all elements of both substantive and procedural unconscionability and may conclude that the contract is unconscionable because of the overall imbalance.")).  <u>See</u> <u>Laurich v. Red Lobster Restaurants, LLC</u>, 295 F. Supp. 3d 1186, 1211 (D.N.M. 2017)(Browning, J.).

### 1. **Procedural Unconscionability.**

"Procedural unconscionability may be found where there was inequality in the contract formation."  <u>State ex rel. King v. B & B Inv. Grp., Inc.</u>, 2014-NMSC-024, ¶ 27, 329 P.3d 658, 669 (citing <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 23, 208 P.3d at 907-08). A contract is procedurally unconscionable "only where the inequality is so gross that one party's choice is effectively non-existent."  <u>Guthmann v. La Vida Llena</u>, 1985-NMSC-106, ¶ 18, 709 P.2d at 679.  Whether a party has meaningful choice is "determined by examining the circumstances surrounding the contract formation[], including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties."  <u>Guthmann v. La Vida Llena</u>, 1985-NMSC-106, ¶ 16, 709 P.2d at 679 (internal citations omitted). Consequently, "[a]nalyzing procedural unconscionability requires the court to look beyond the four corners of the contract and examine factors 'including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.'"  <u>State ex rel. King v. B & B Inv. Grp., Inc.</u>, 2014-NMSC-024, ¶ 27, 329 P.3d at 669 (quoting <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 27, 208 P.3d at 907-08).  <u>See</u> <u>City of Raton v. Arkansas River Power Auth.</u>, 760 F. Supp. 2d 1132, 1154 (D.N.M. 2009)(Browning, J.)("In analyzing whether a contract or a term in a contract is procedurally unconscionable, New Mexico courts consider several factors, including the use of

high pressure tactics, the relative scarcity of the subject matter of the contract, and the relative education, sophistication and wealth of the parties.")(citing Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679).

"When assessing procedural unconscionability, courts should consider whether the contract is one of adhesion." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d 803, 817. An adhesion contract is a standardized contract that a transacting party with superior bargaining strength offers to a "weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (citing Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910). "Adhesion contracts generally warrant heightened judicial scrutiny because the drafting party is in a superior bargaining position." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (citing Wis. Auto Title Loans, Inc. v. Jones, 714 N.W.2d 155, 170 (Wis. 2006)). "Although not all adhesion contracts are unconscionable, an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.'" Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910).

For example, in State ex rel. King v. B & B Investment Group, Inc., the Supreme Court of New Mexico decided whether loan contracts offered by certain small-loan lenders were unconscionable. See 2014-NMSC-024, ¶ 27, 329 P.3d at 669-70. The Supreme Court of New Mexico concluded that substantial evidence supported "the finding of procedural unconscionability as understood in common law." 2014-NMSC-024, ¶ 27, 329 P.3d at 669-70. The Supreme Court of New Mexico predicated its holding that the loan contracts at issue were procedurally unconscionable on a number of facts regarding contract formation, including

the relative bargaining strength and sophistication of the parties is unequal. Moreover, borrowers are presented with Hobson's choice: either accept the quadruple-digit interest rates, or walk away from the loan. The substantive terms are preprinted on a standard form, which is entirely nonnegotiable. The interest rates are set by drop-down menus in a computer program that precludes any modification of the offered rate. Employees are forbidden from manually overriding the computer to make fee adjustments without written permission from the companies' owners: manual overrides will be considered in violation of company policy and could result with . . . criminal charges brought against the employee and or termination.

2014-NMSC-024, ¶ 27, 329 P.3d at 669 (internal quotation marks omitted). The Supreme Court of New Mexico further concluded that, on these facts, the loan contracts at issue were contracts of adhesion, because the "contracts are prepared entirely by Defendants, who have superior bargaining power, and are offered to the weaker party on a take-it-or-leave-it basis." 2014-NMSC-024, ¶ 27, 329 P.3d at 669. The Supreme Court of New Mexico added that, "although they will not be found unconscionable in every case, an adhesion contract is procedurally unconscionable and unenforceable when the terms are patently unfair to the weaker party." 2014-NMSC-024, ¶ 27, 329 P.3d at 669 (citing Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817). See La Frontera Center, Inc. v. United Behavioral Health, Inc., 268 F. Supp. 3d 1167, 1204 (D.N.M. 2017)(Browning, J.).

**2.    Substantive Unconscionability.**

Substantive unconscionability requires courts "to consider 'whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns'" to determine "'the legality and fairness of the contract terms themselves.'" Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 22, 208 P.3d at 907). Accordingly, when examining a contract for substantive unconscionability, courts must "examine the terms on the face of the contract and . . . consider the practical consequences

of those terms." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (citing State ex rel. King v. B & B Inv. Grp., Inc., 2014-NMSC-024, ¶ 32, 329 P.3d at 670 ("[S]ubstantive unconscionability can be found by examining the contract terms on their face.")). "Thus, the party bearing the burden of proving substantive unconscionability need not make any particular evidentiary showing and can instead persuade the factfinder that the terms of a contract are substantively unconscionable by analyzing the contract on its face." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 622.

"When its terms are unreasonably favorable to one party, a contract may be held to be substantively unconscionable." Monette v. Tinsley, 1999-NMCA-040, ¶ 19, 975 P.2d 361, 365 (citing State ex rel. State Highway Transp. Dep't v. Garley, 1991-NMSC-008, 806 P.2d 32, 39; Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 23, 709 P.2d 675, 680). The Supreme Court of New Mexico noted in Guthmann v. La Vida Llena:

> In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made. The test is not simple, nor can it be mechanically applied. The terms are to be considered "in the light of the general commercial background and the commercial needs of the particular trade or case." Corbin suggests the test as being whether the terms are "so extreme as to appear unconscionable according to the mores and business practices of the time and place."

Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 23, 709 P.2d at 680 (quoting Bowlin's, Inc. v. Ramsey Oil Co., 1983-NMCA-038, ¶ 22, 662 P.2d at 669). Further, for a court to hold that a contract is substantively unconscionable, the court must conclude that one or more of the contract's terms was grossly unfair "at the time the contract was formed." Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 24, 709 P.2d at 680.

With respect to arbitration agreements specifically, the Supreme Court of New Mexico has held that arbitration agreements are substantively unconscionable and thus unenforceable

where the arbitration agreement contains a unilateral carve out that explicitly exempts from mandatory arbitration those judicial remedies that a lender is likely to need, while providing no such exemption for the borrower. See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 907-10. In Cordova v. World Finance Corporation of New Mexico, for example, the Supreme Court of New Mexico stated that "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable." 2009-NMSC-021, ¶ 25, 208 P.3d at 908. In that case, a loan contract included a purportedly bilateral arbitration clause containing a unilateral carve-out provision that exempted the lender from mandatory arbitration when the lender sought remedies, "including[,] but not limited to, judicial foreclosure or repossession" in the event of the borrower's default. 2009-NMSC-021, ¶ 3, 208 P.3d at 904 (internal quotation marks omitted). The Supreme Court of New Mexico held that the arbitration clause was "grossly unreasonable" and against New Mexico public policy, because the agreement required the borrower to arbitrate any of the borrower's claims while reserving to the lender "the exclusive option of seeking its preferred remedies through litigation." 2009-NMSC-021, ¶ 20, 208 P.3d at 907. Accordingly, the Supreme Court of New Mexico held that the arbitration agreement was substantively unconscionable. See 2009-NMSC-021, ¶ 32, 208 P.3d at 910.

Next, in Rivera v. American General Financial Services, Inc., the Supreme Court of New Mexico confronted a similar loan contract in which an arbitration agreement required the borrower to arbitrate any claims against the lender while exempting from mandatory arbitration the lender's "self-help or judicial remedies" concerning the property securing the transaction and any claims that the lender might have "[i]n the event of a default." 2011-NMSC-033, ¶ 3, 259 P.3d at 807-08. As in Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at

910, in <u>Rivera v. American General Financial Services, Inc.</u>, the Supreme Court of New Mexico again held the arbitration agreement substantively unconscionable, because the arbitration clause allowed the lender to "retain[] the right to obtain through the judicial system the only remedies it [is] likely to need," while "forcing [the borrower] to arbitrate any claim she may have." 2011-NMSC-033, ¶ 53, 259 P.3d at 818-19. Accordingly, the Supreme Court of New Mexico held that the arbitration agreement was unreasonably one-sided and, therefore, unenforceable qua substantively unconscionable. <u>See</u> 2011-NMSC-033, ¶ 54, 259 P.3d at 818-19.

By contrast, in <u>Dalton v. Santander Consumer USA, Inc.</u>, the Supreme Court of New Mexico held that an arbitration agreement between a lender and a borrower which included a bilateral exception for small claims less than $10,000.00 was not substantively unconscionable, "even if one party is substantively more likely to bring small claims actions . . . ." 2016-NMSC-035, ¶ 21, 385 P.3d at 624. <u>See id.</u> ¶ 22, 385 P.3d at 625 ("We are hesitant to adopt a holding that might discourage bilateral small claims carve-outs, and thereby curtail the availability of small claims proceedings to New Mexico consumers . . . ."). The Supreme Court of New Mexico stated that "[g]ross unfairness is a bedrock principle of our unconscionability analysis," 2016-NMSC-035, ¶ 21; 385 P.3d at 624, and refused to conclude that an arbitration agreement that exempts, for both parties, claims less than $10,000.00 from mandatory arbitration is either unreasonably one-sided or grossly unfair, <u>see</u> 2016-NMSC-035, ¶¶ 21-25; 385 P.3d at 624-25. <u>See Thompson v. THI of New Mexico at Casa Arena Blanca, LLC</u>, 2006 WL 4061187, at *10.

The Supreme Court has also held that state courts may not use unconscionability to subvert the purposes of the FAA. <u>See AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 341 (2011)(Scalia, J.)("<u>Concepcion</u>"). To be sure, the FAA says that arbitration agreements may be rendered unenforceable "upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. "But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." Concepcion, 563 U.S. at 341. "The FAA's preemptive effect might extend even to grounds traditionally thought to exist 'at law or in equity for the revocation of any contract.'" Concepcion, 563 U.S. at 341 (quoting 9 U.S.C. § 2). "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 563 U.S. at 343. "A federal statute's saving clause 'cannot in reason be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'" Concepcion, 563 U.S. at 343 (quoting American Telephone & Telegraph Co. v. Central Office Telephone, Inc., 524 U.S. 214, 227-28 (1998)).

The Tenth Circuit has held that the FAA "limits state-law grounds for refusing to enforce an arbitration clause." Walker v. BuildDirect.com Technologies, Inc., 733 F.3d 1001, 1004 (10th Cir. 2013). "In particular, states 'may not . . . decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.'" Walker v. BuildDirect.com Technologies, Inc., 733 F.3d at 1005 (quoting Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. at 281). See Parrish v. Valero Retail Holdings, Inc., 727 F. Supp. 2d at 1279 ("[T]he Court believes that such hostility to arbitration in employment contracts may begin to infringe the FAA's intent to protect against judicial hostility towards arbitration."). The Court therefore must ensure that state courts are not using contract defenses such as unconscionability to destroy the FAA. See Jerry Erwin Associates, Inc. v. Estate of Asher by and through Zangara, 290 F. Supp. 3d 1213, 1244 (D.N.M. 2017)(Browning, J.). See

also Wallace Mendelson, The Judge's Art, 109 U. PA. L. REV. 524, 533 (1961)("Even Plato recognized that a philosopher king would be unacceptable unless he could hide his naked power by a 'noble fiction.' It follows, of course, that platonists on the bench do not avow, but only practice, activism.").

## ANALYSIS

The Court concludes that the parties have not established diversity jurisdiction, so the Court will order the parties to show cause why the Court should not dismiss this case for lack of subject-matter jurisdiction. On the merits, the Arbitration Agreement contains adequate consideration, and, although the injunctive relief provision is substantively unconscionable, it is also severable. Finally, the Court will not hold the Arbitration Agreement's sixty day limitations period unconscionable.

## I. THE PARTIES HAVE NOT ESTABLISHED DIVERSITY JURISDICTION.

The Court concludes that the parties have not presented sufficiently clear evidence establishing diversity jurisdiction. Although the parties have not raised this issue, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012). In performing this obligation, the Court has found that this case's jurisdictional pleadings are less than clear. "Under CAFA, suits brought by unincorporated association[s] are treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by its state of organization and principal place of business, not by the citizenship of its members." Siloam Springs Hotel, L.L.C., v. Century Sur. Co., 781 F.3d 1233, 1237 n.1 (10th Cir. 2015)(internal quotation marks omitted)(alteration in original).[7] An LLC, like Nine

---

[7]CAFA is unique in how it treats LLCs for diversity jurisdiction purposes. Typically, an

Energy, is an unincorporated association. The Amended Complaint states that Nine Energy is a Delaware LLC "that does business throughout the United States, including New Mexico. Defendant conducts a substantial portion of its business in New Mexico." Amended Complaint ¶ 7, at 2. The Amended Complaint does not, however, allege the location of Nine Energy's principal place of business. The Amended Complaint alleges that "at least one NM Class Member is from a different state than Defendant," but the Court cannot confirm that for two reasons. Amended Complaint ¶ 8, at 3. First, the Court does not know Nine Energy's principal place of business. Second, the Amended Complaint does not allege the citizenship of any of the "NM Class Members." Amended Complaint ¶ 8, at 3. Patterson alleges that the NM class members "consist of Defendant's current and former Operators who received pay on a salary or salary-plus-bonus basis that worked over 40 hours in at least one workweek in New Mexico since the time Defendant began paying Operators on a salary or salary-plus bonus basis in New Mexico." Amended Complaint ¶ 6, at 2. Working for at least one week in New Mexico does not, however, show that an individual is a citizen of New Mexico, because, for diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 2013). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., No. CIV 09-0567, 2010 WL 553443, at *3 (D.N.M. 2010)(Browning, J.). Patterson's Amended Complaint does not show the domicile of any of the putative class members.[8] Because the citizenships of the parties are not adequately pled, the

LLC "takes the citizenship of all its members." Siloam Springs Hotel, L.L.C., v. Century Sur. Co., 781 F.3d at 1238.

[8]Because of the Court's concerns regarding diversity jurisdiction, the Court entered a minute order stating "the parties will provide the Court with information adequately pleading the

Court will enter an order requiring the parties to show cause within ten calendar days why the Court should not dismiss this case for lack of subject-matter jurisdiction. If the parties do not adequately demonstrate that the Court has jurisdiction, the Court will dismiss the case without prejudice for lack of subject-matter jurisdiction and not decide any issues on the merits.

## II.    If THE COURT HAS SUBJECT-MATTER JURISDICTION, THE COURT IS INCLINED TO HOLD THAT THE ARBITRATION AGREEMENT CONTAINS ADEQUATE CONSIDERATION.

If the Court has subject-matter jurisdiction, the Court is inclined to conclude that the Arbitration Agreement contains adequate consideration. "To determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 8, 90 P.3d 466, 469 (citations omitted). To be legally enforceable, a contract must contain consideration. See Hartbarger v. Frank Paxton Co., 1993-NMSC-029, ¶ 7, 857 P.2d 776, 780. "In New Mexico, forbearance may be consideration for a

---

citizenship of Nine Energy, LLC and at least one putative class member for purposes of establishing diversity jurisdiction under the Class Action Fairness Act." Minute Order, filed August 29, 2018 (Doc. 19). In response, Patterson filed his Second Amended Complaint, filed August 29, 2018 (Doc. 20)("Second Amended Complaint"). This new Complaint states that Patterson is a citizen of Arkansas. See Second Amended Complaint ¶ 7, at 2. It also states that Nine Energy is a Delaware LLC "that does business throughout the United States, including New Mexico. Defendant conducts a substantial portion of its business in New Mexico." Second Amended Complaint ¶ 8, at 2. The Complaint then lists the citizenship of all of Nine Energy's members, all of whom are Texas citizens. See Second Amended Complaint ¶ 9, at 3. Typically, an LLC "takes the citizenship of all its members." Siloam Springs Hotel, L.L.C., v. Century Sur. Co., 781 F.3d at 1238. CAFA is unique, however, in how it treats LLCs for diversity jurisdiction purposes. "Under CAFA, suits brought by unincorporated association[s] are treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by its state of organization and principal place of business, not by the citizenship of its members." Siloam Springs Hotel, L.L.C., v. Century Sur. Co., 781 F.3d 1233, 1237 n.1 (10th Cir. 2015)(internal quotation marks omitted)(alteration in original). Thus, although Patterson has pled that Nine Energy is a Delaware LLC, he has not pled the location of Nine Energy's principal place of business. Accordingly, the Court will still enter an order to show cause why this case should not be dismissed for lack of subject-matter jurisdiction.

contract where either an express agreement to forbear exists or where the circumstances otherwise suggest that a contract ought to be enforced by implying such an agreement."  Spray v. City of Albuquerque, 1980-NMSC-028, ¶ 8, 608 P.2d 511, 512-13.

Nine Energy first asserts that the Arbitration Agreement's consideration is Patterson's initial offer of employment, because Patterson signed the Arbitration Agreement on the same day that he accepted his employment offer.  See Reply at 5.  Patterson responds that Nine Energy's employment offer cannot be consideration for Patterson agreeing to arbitration, because the Offer Letter provides a list of contingencies, none of which include signing the Arbitration Agreement.  See Surreply at 6.  Further, according to Patterson, the Arbitration Agreement "contains an explicit merger clause that prevents the Offer Letter -- or any other oral/written agreement -- from being incorporated into the Arbitration Agreement or for serving as the consideration for the Agreement."  Surreply at 6.

If the Court has subject-matter jurisdiction, the Court is inclined to hold that Patterson's employment offer does not serve as consideration.  The Court has observed "there is no indication in New Mexico case law that an offer of at-will employment is insufficient consideration for an arbitration agreement."  Parrish v. Valero Retail Holdings, Inc., 727 F. Supp. 2d 1266, 1279 (D.N.M. 2010)(Browning, J.).  Here, however, Patterson's employment offer was not consideration for him signing the Arbitration Agreement.  By its own terms, the Arbitration Agreement never mentions Patterson's employment offer or acceptance.  Further, the Arbitration Agreement states: "This Agreement, which sets forth the terms of the dispute resolution program, is a contract but it does not modify any 'at-will' employment relationship between the Company and Employee."  Arbitration Agreement at 3.  More importantly, the Arbitration Agreement contains an integration clause, stating:

> No agreements or representations, oral or otherwise express or implied, with respect to the subject matter hereof have been made by either Party that are not set forth expressly in this Agreement. . . . This Agreement sets forth the entire agreement of the Parties hereto with respect to the subject matter herein, in particular the Parties' agreement regarding the protection of Confidential Information and the procedural mechanism for the final resolution of Disputes and supersedes all prior understandings, agreements, clauses, provisions, representations, or promises, whether oral or written, of the Parties to the extent they relate to or concern the subject matter herein.

Arbitration Agreement at 5. This language precludes Patterson's employment offer -- which is in the Offer Letter and not in the Arbitration Agreement -- from providing consideration for the Arbitration Agreement. Further, Patterson's Offer Letter states that his employment was contingent upon an enumerated list of items, including drug testing, physical capacity testing, and other things. See Offer Letter at 1. The Offer Letter, however, does not mention arbitration. See Offer Letter at 1-2. In short, the Arbitration Agreement says that it does not modify any at-will employment relationship, never mentions Patterson's employment offer, and contains a broad integration clause. On top of that reality, the Offer Letter does not mention arbitration. On these facts, the Court cannot properly conclude that Patterson's employment offer served as consideration for the Arbitration Agreement.

Despite this ruling, however, both parties' arguments miss the point. The Arbitration Agreement itself contains adequate consideration on its face, independent of any employment offer. Consideration involves a bargained-for exchange between the parties. See Romero v. Earl, 1991-NMSC-042, ¶ 6, 810 P.2d 808, 810. "Something is bargained for 'if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" Romero v. Earl, 1991-NMSC-042, ¶ 6, 810 P.2d at 810 (quoting Restatement (Second) of Contracts § 71 (1979)). "[I]f the requirement of bargained for consideration is met, there is no further requirement of a benefit to the promisor or a detriment to the promisee."

Romero v. Earl, 1991-NMSC-042, ¶ 6, 810 P.2d at 810 (citing Restatement (Second) of Contracts § 79 (1979)).

Here, both parties mutually exchanged sought-after promises to forfeit their respective rights to a jury trial and, instead, promised to arbitrate a long list of potential disputes. The Arbitration Agreement states that "the Company and the Employee agree to submit exclusively to final and binding arbitration any and all Disputes as defined herein in accordance with the following understanding and terms." Arbitration Agreement at 3. The Arbitration Agreement defines the word "dispute" as

> all legal and equitable claims, demands, disputes, controversies, issues, and disagreements, of whatever nature or kind, whether in contract, tort, under statute or regulation, or any other law or source of legal obligation, including but not limited to those relating to, concerning, or arising out of this Agreement; the interpretation or subject matter of this Agreement or program . . . wages or other compensation received by or owed to any Employee, including minimum wage and overtime pay.

Arbitration Agreement at 2. The Arbitration Agreement continues: "The Parties waive any right to a jury trial . . . with respect to Disputes that are subject of this Agreement and for which a jury trial . . . would otherwise be available." Arbitration Agreement at 3. Thus, both parties exchanged sought-after promises to forfeit their respective rights to a jury trial and to arbitrate any claim defined as a "dispute." Arbitration Agreement at 3. For example, Nine Energy surrendered the right to bring tort claims against Patterson for negligently damaging its expensive oilfield equipment or stealing it, i.e. the torts of negligence or conversion. See Arbitration Agreement at 2 (defining the word "dispute" to include torts). Conversely, Patterson exchanged away the right to bring claims for "minimum wage and overtime pay" in court. Arbitration Agreement at 2. Both parties therefore mutually exchanged sought-after promises to arbitrate, rather than litigate, a multitude of potential claims. That is all consideration requires.

See Romero v. Earl, 1991-NMSC-042, ¶ 6, 810 P.2d at 810.[9]

### III.   IF THE COURT HAS SUBJECT-MATTER JURISDICTION, THE COURT IS INCLINED TO HOLD THAT THE INJUNCTIVE RELIEF PROVISION IS SUBSTANTIVELY UNCONSIONABLE, BUT SEVERABLE.

The Court is inclined to hold that, although the injunctive relief provision in the Arbitration Agreement is substantively unconscionable, it is also severable.   Substantive unconscionability requires courts "to consider 'whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns'" to determine "'the legality and fairness of the contract terms themselves.'"   Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 22, 208 P.3d at 907). Accordingly, when examining a contract for substantive unconscionability, courts must "examine the terms on the face of the contract and . . .  consider the practical consequences of those terms."   Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621-22.

With respect to arbitration agreements specifically, the Supreme Court of New Mexico has held that arbitration agreements are substantively unconscionable and thus unenforceable when the arbitration agreement contains a unilateral carve-out that explicitly exempts from

---

[9]The Court notes that Mark V does not apply to this case.  Mark V announced that "we discuss the appropriate methods for a trial court to use in determining whether a contract contains ambiguous terms and in resolving any ambiguities thus discovered."  1993-NMSC-001, ¶ 1, 845 P.2d at 1233.   It explains that "[t]he question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court."  1993-NMSC-001, ¶12, 845 P.2d at 1235.   It continues that, "[o]nce the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact."  1993-NMSC-001, ¶13, 845 P.2d at 1235. Because Patterson's case does not concern interpreting any contract ambiguities, Mark V is inapplicable.  See Israel v. Glasscock, 616 F. Supp. 2d 1126, 1135 (D.N.M. 2009)(Browning, J.)(noting that in Mark V, the "Supreme Court of New Mexico summarized the law of contract interpretation").

mandatory arbitration those judicial remedies that a lender is likely to need, while providing no such exemption for the borrower. See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 907-10. In Cordova v. World Finance Corporation of New Mexico, for example, the Supreme Court of New Mexico stated that "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable." 2009-NMSC-021, ¶ 25, 208 P.3d at 908. In that case, a loan contract included a purportedly bilateral arbitration clause containing a unilateral carve-out provision that exempted the lender from mandatory arbitration when the lender sought remedies, "including[,] but not limited to, judicial foreclosure or repossession" in the event of the borrower's default. Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 3, 208 P.3d at 904 (internal quotation marks omitted). The Supreme Court of New Mexico held that the arbitration clause was "grossly unreasonable" and against New Mexico public policy, because the agreement required the borrower to arbitrate any of the borrower's claims while reserving to the lender "the exclusive option of seeking its preferred remedies through litigation." Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208 P.3d at 907. Accordingly, the Supreme Court of New Mexico held that the arbitration agreement was substantively unconscionable. See Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 910.

Next, in Rivera v. American General Financial Services, Inc., the Supreme Court of New Mexico confronted a similar loan contract in which an arbitration agreement required the borrower to arbitrate any claims against the lender while exempting from mandatory arbitration the lender's "self-help or judicial remedies" concerning the property securing the transaction, and any claims that the lender might have "[i]n the event of a default." 2011-NMSC-033, ¶ 3,

259 P.3d at 807-08.  As in Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208

P.3d at 910, in Rivera v. American General Financial Services, Inc., the Supreme Court of New

Mexico again held the arbitration agreement substantively unconscionable, because the

arbitration clause allowed the lender to "retain[] the right to obtain through the judicial system

the only remedies it [is] likely to need," while "forcing [the borrower] to arbitrate any claim she

may have."  2011-NMSC-033, ¶ 53, 259 P.3d at 818-19.  Accordingly, the Supreme Court of

New Mexico held that the arbitration agreement was unreasonably one-sided and, therefore,

unenforceable qua substantively unconscionable.  See Rivera v. Am. Gen. Fin. Servs., Inc.,

2011-NMSC-033, ¶ 54, 259 P.3d at 818-19.

In essence, the Supreme Court of New Mexico has shown this pattern: If an arbitration

agreement exempts from arbitration claims that the stronger party will likely bring, but mandates

arbitration for claims that the weaker party will likely bring, then the arbitration agreement is

substantively unconscionable.  See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033,

¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208

P.3d at 907.

Here, the Arbitration Agreement explicitly exempts from arbitration claims that only the

stronger party, Nine Energy, would bring, i.e. moving for injunctive relief to protect Nine

Energy's trade secrets.  The Arbitration Agreement states:

> Notwithstanding the provisions of this Agreement, the Company may bring an
> action in any court of competent jurisdiction for injunctive relief to enforce the
> Employee's obligations with respect to the confidentiality and protection of trade
> secrets and other non-public information belonging to the Company, or with
> respect to any non-competition, non-solicitation, or any other restrictive covenant
> provisions in any separate agreement between the Company and the Employee.

Arbitration Agreement at 4.  In light of the Supreme Court of New Mexico precedent in Rivera

v. American General Financial Services, Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19,

and Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208 P.3d at 907, the Court is inclined to conclude that the Supreme Court of New Mexico would hold that this unilateral carve-out to benefit exclusively the stronger party is substantively unconscionable under New Mexico law and thus unenforceable.

Regardless, the injunctive relief provision is severable from the rest of the Arbitration Agreement.  "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term."  Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 39, 208 P.3d at 911.  "Courts may render a contract or portions of a contract unenforceable under the equitable doctrine of unconscionability when the terms are 'unreasonably favorable to one party while precluding a meaningful choice of the other party.'"  Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 6, 385 P.3d 619, 621 (alteration added)(quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 21,  208 P.3d 901, 907)(emphasis added).

In Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901, the Supreme Court of New Mexico addressed an arbitration agreement which bound both parties to arbitrate. See 2003-NMSC-011, ¶ 2, 68 P.3d at 902.  For arbitration awards over a specified dollar amount, however, "the contract provided that the arbitration was subject to de novo appeal by either party."  2003-NMSC-011, ¶ 2, 68 P.3d at 902.  The Supreme Court of New Mexico held that, "to avoid the unconscionable result, we strike the de novo appeal provision in the contract and leave the remainder of the contract intact.  Because the appeal provision is severable from the agreement to arbitrate, the insurance contract now contains a mutual agreement to binding arbitration."  2003-NMSC-011, ¶ 18, 68 P.3d at 909.

Here, while the Court is inclined to hold that the Arbitration Agreement's injunctive

relief provision is substantively unconscionable, it is also inclined to conclude that the injunctive relief provision "is severable from the agreement to arbitrate," and, without it, the Arbitration Agreement "now contains a mutual agreement to binding arbitration." 2003-NMSC-011, ¶ 18, 68 P.3d at 909. See Arbitration Agreement at 3 ("The Company and the Employee agree to submit exclusively to final and binding arbitration any and all Disputes as defined herein.").[10] Further, it would make little sense for the Court to trash the entire Arbitration Agreement because of an unconscionable provision unrelated to this case. The underlying claims in this case are about failure to pay overtime wages and have nothing to do with seeking injunctive relief to protect confidential information. See Amended Complaint ¶ 3, at 1. For these reasons, the Court concludes that, if it has subject-matter jurisdiction, it should sever the injunctive relief provision from the rest of the Arbitration Agreement.[11]

---

[10]Without the injunctive relief provision, not only does the Arbitration Agreement "now contain[] a mutual agreement to binding arbitration," 2003-NMSC-011, ¶ 18, 68 P.3d at 909, it contains some unilateral carve-outs that benefit exclusively the weaker party with less bargaining power. See Arbitration Agreement at 3 (noting that the Arbitration Agreement "does not apply to claims for workers' compensation benefits, unemployment compensation benefits" and other claims that only an employee would bring). In any event, no party argues that such provisions are unconscionable, and the Supreme Court of New Mexico appears exclusively focused on holding unconscionable unilateral carve-outs of arbitration agreements that benefit exclusively the stronger party. See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208 P.3d at 907.

[11]Patterson argues that the Court should not sever any provisions of the Arbitration Agreement, because the agreement contains no severance clause. See Surreply at 9-10. A long series of Supreme Court of New Mexico cases, however, articulate the following severability rule:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

State ex rel. State Highway Transp. Dep't v. Garley, 1991-NMSC-008, ¶30, 806 P.2d at 39. See Padilla v. State Farm. Mut. Auto. Ins. Co., 2003-NMSC-011, ¶15, 68 P.3d at 907 (articulating

## III. THE COURT IS NOT INCLINED TO HOLD THE SIXTY-DAY PROVISION UNCONSCIONABLE.

Patterson argues -- for the first time in a surreply -- that the Arbitration Agreement is unconscionable, because "the terms of the agreement prevent Plaintiff from vindicating his statutory rights under the FLSA."  Surreply at 7.  Specifically, Patterson contends that the Arbitration Agreement's provision requiring arbitration to commence within sixty days after a dispute arises, see Arbitration Agreement at 3, is unconscionable, because "the FLSA's limitations period may not be shortened by contract."[12]  Surreply at 8.  The Court disagrees. First, the Court does not believe that the Supreme Court of New Mexico would hold the sixty-day provision substantively unconscionable.  In New Mexico, time-to-sue provisions are enforceable unless they violate public policy.  See State ex rel. Udall v. Colonial Penn Ins. Co.,1991-NMSC-048, ¶ 6, 812 P.2d at 779.  The general rule is that time-to-sue provisions setting limits shorter than New Mexico's general six-year contract claim statute of limitations do not violate public policy.  See Elec. Gin Co. v. Firemen's Fund Ins. Co., 1935-NMSC-001, ¶¶ 1-6, 39 P.2d 1024, 1024-25.  See also Turner v. New Brunswick Fire Ins. Co. of New Brunswick, N. J., 1941-NMSC-014, ¶ 6, 112 P.2d 511, 513 (rejecting the argument that "a one-year limitation period is void because it shortens the statutory period of six years for commencing

---

the same rule); Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 39, 208 P.3d at 911 (same); Restatement (Second) of Contracts § 208 (same).  This rule does not require the presence of a severance clause to operate, and Patterson cites no New Mexico authority suggesting otherwise, or any New Mexico authority at all, to support his argument.  See Surreply at 9-10; Padilla v. State Farm. Mut. Auto. Ins. Co., 2003-NMSC-011, ¶18, 68 P.3d at 909 (applying the above rule by striking a contract provision and leaving the remainder of the contract intact).

[12]The FLSA's statute of limitations period is two years after a cause of action accrues or three years if the FLSA violation is willful.  See 29 U.S.C. § 255(a).  Such periods are longer than the sixty day window in the Arbitration Agreement.  See Arbitration Agreement at 3.

actions on written contracts" (citing Electric Gin Co. v. Firemen's Fund Insurance Co., 1935-NMSC-001, ¶¶ 1-6, 39 P.2d 1024, 1024-25)); Sandoval v. Valdez, 1978-NMCA-016, ¶ 39 , 580 P.2d 131, 136 ("It is established law in New Mexico that a 'No Cause of Action' clause in a fire insurance policy, or in a Livestock Transportation policy, is enforceable." (citing Elec. Gin Co. v. Firemen's Fund Ins. Co., 1935-NMSC-001, ¶¶ 1-6, 39 P.2d 1024, 1024-25; Sandoval v. Valdez, 1978-NMCA-016, ¶ 39, 580 P.2d 131, 136; Wiseman v. Arrow Freightways, Inc., 1976-NMCA-067, ¶ 8, 552 P.2d 1240, 1242); Wiseman v. Arrow Freightways, Inc., 1976-NMCA-067, ¶ 8, 552 P.2d 1240, 1242 (concluding that a livestock transportation policy's time-to-sue provision is enforceable and not contrary to public policy). The Court concludes that the Supreme Court of New Mexico would follow Sandoval v. Valdez, 1978-NMCA-016, ¶ 39, 580 P.2d at 136, and Wiseman v. Arrow Freightways, Inc., 1976-NMCA-067, ¶ 8, 552 P.2d 1240, 1242, because those Court of Appeals of New Mexico cases' holdings are consistent with the Supreme Court of New Mexico's rulings in Elec. Gin Co. v. Firemen's Fund Ins. Co., 1935-NMSC-001, ¶¶ 1-6, 39 P.2d at 1024-25 and Whelan v. State Farm Mut. Auto. Ins. Co., 2014-NMSC-021, 329 P.3d 646 ("Whelan"). Moreover, the Supreme Court of New Mexico has cited those Court of Appeals of New Mexico cases' time-to-sue provision rulings without disapproving of them. See, e.g., Boradiansky v. State Farm Mut. Auto. Ins. Co., 2007-NMSC-015, ¶¶ 6-7, 156 P.3d 25, 26 (citing Sandoval v. Valdez, 1978-NMCA-016, ¶¶ 20-23, 580 P.2d at 136); Sanchez, 1981-NMSC-032, ¶ 8, 632 P.2d at 344 (citing Wiseman v. Arrow Freightways, Inc., 1976-NMCA-067, ¶ 7, 552 P.2d at 1242). Based on these cases, the Court is inclined to conclude that the Supreme Court of New Mexico would not hold the Arbitration Agreement's sixty-day provision unconscionable.

Second, Patterson's Amended Complaint does not allege that Nine Energy has violated

the FLSA.  The only count listed in the Amended Complaint alleges that Nine Energy violated the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-22(D).  See Amended Complaint ¶ 51, at 7.  In other words, Patterson asks the Court to strike the Arbitration Agreement as substantively unconscionable, because part of the Arbitration Agreement might violate a limitations period in a statute that Patterson does not allege that Nine Energy violated.  The Court will not rule that an arbitration agreement fails, because part of it may prevent a plaintiff from bringing a claim that he has chosen not to bring.

Alternatively, even if the Court were to hold that the sixty-day limitations period is substantively unconscionable, the Court would not strike the entire Arbitration Agreement, but, rather, would sever the sixty-day provision.  In Rivera v. Am. Gen. Fin. Servs., Inc., the Supreme Court of New Mexico struck an entire arbitration agreement and appeared to distinguish Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901, explaining that "as in Cordova the unconscionable terms are central to the arbitration scheme and cannot be severed without substantially altering the method of dispute resolution contractually agreed on by the parties." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819.  The Supreme Court of New Mexico continued that it would not rewrite a contract "that is laced with unenforceable terms that were 'central to the original mechanism[] for resolving disputes between the parties.'"  2011-NMSC-033, ¶ 56, 259 P.3d at 819 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 40, 208 P.3d at 912).

Here, the sixty-day provision can "be severed without substantially altering the method of dispute resolution contractually agreed on by the parties," Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819, because that provision does not alter the method of dispute resolution to which the parties agreed or the claims that may be arbitrated.  Further, the

sixty-day provision is not "central to the arbitration scheme" nor "central to the original mechanism[] for resolving disputes between the parties"; it is a time limit. Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819. Severance, rather than throwing out the entire agreement, is also an appropriate remedy, because both federal and New Mexico law reflect a public policy in favor of arbitration agreements. See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d at 1488-89 ("There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."); United Tech. & Res., Inc. v. Dar Al Islam, 1993-NMSC-005, ¶ 11, 846 P.2d at 309 ("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'")(quoting Dairyland Ins. Co. v. Rose, 1979-NMSC-021, ¶ 14, 591 P.2d at 284). For these reasons, if the Court has subject-matter jurisdiction, even if the Court were to hold the sixty day provision unconscionable, it would sever the provision and not strike the entire Arbitration Agreement.

Finally, if the Court has subject-matter jurisdiction, the Court is inclined to stay proceedings in this case, rather than dismissing it. The Tenth Circuit has held that "if a court concludes that parties agreed to arbitrate an issue, the court must stay litigation in favor of arbitration." Belnap v. Iasis Healthcare, 844 F.3d 1272, 1288 (10th Cir. 2017). See Williams v. Imhoff, 203 F.3d 758, 764 (10th Cir. 2000)("Under the FAA, a court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.")(internal quotation marks omitted). For the reasons explained above, the Court is satisfied that the parties agreed in writing to arbitrate this case's underlying claims. Accordingly, if the Court has subject-matter jurisdiction, it is inclined to stay this case's proceedings, rather than dismiss the case.

**IT IS ORDERED** that: (i) if the Court has subject-matter jurisdiction, the Defendant's Motion to Dismiss the First Amended Class Action Complaint (R. Doc. 3) and Compel Arbitration, filed December 6, 2017 (Doc. 5), will be granted in part; and (ii) the requests in the Surreply in Opposition to Defendant's Motion to Dismiss the Class Action Complaint and Serve [sic], filed January 10, 2018 (Doc. 16), are granted. The parties will show cause within ten calendar days why this case should not be dismissed for lack of subject-matter jurisdiction. If the Court is satisfied that it has subject-matter jurisdiction, the Court will compel arbitration and stay the case.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jack L. Siegel
Siegel Law Group, P.L.L.C.
Dallas, Texas

-- and --

J. Derek Braziel
Travis Andrew Gasper
Lee & Braziel, L.L.P.
Dallas, Texas

      *Attorneys for the Plaintiff*

Christopher S. Mann
Jones Walker, L.L.P.
New Orleans, Louisiana

-- and --

Jennifer L. Anderson
Jones Walker, L.L.P.
Baton Rouge, Louisiana

*Attorneys for the Defendant*